13 CIV 3375

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

JOHNNIE HARVEY,

COMPLAINT

Plaintiff,

-against-

THE CITY OF NEW YORK; POLICE OFFICER ELISHA
DUNCAN; POLICE OFFICER JOSE BONILLA; POLICE
OFFICER EDWIN JEREZ; DETECTIVE JAMES
BARRY; UNDERCOVER POLICE OFFICER, Shield No.
119; and JOHN/JANE DOE # 1 – 10,

JURY TRIAL DEMANDED

Defendants.

-----------------------------------------------------------------------x

RECEIVED

MAY 17 2013

U.S.D.C. S.D. N.Y.
CASHIERS

## NATURE OF THE ACTION

1.      This is an action to recover money damages arising out of the violation of

Plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth,

Fifth, and Fourteenth Amendments to the Constitution of the United States.

3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and

1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5.      Plaintiff demands a trial by jury in this action.

## PARTIES

6.    Plaintiff Johnnie Harvey ("Plaintiff" or "Mr. Harvey"), an African-American male, is a resident of the County of Bronx, City of New York.

7.    Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8.    Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

9.    The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.    At all times relevant herein, Defendant Police Officer Elisha Duncan ("Duncan") was an officer, employee, and agent of Defendant The City of New York.

11.    At all times relevant herein, Defendant Duncan was acting within the scope of his employment with Defendant The City of New York.

12.    At all times relevant herein, Defendant Duncan was acting under color of state law.

13.    Defendant Duncan is sued in his individual and official capacities.

14.    At all times relevant herein, Defendant Police Officer Jose Bonilla ("Bonilla") was an officer, employee, and agent of Defendant The City of New York.

15.    At all times relevant herein, Defendant Bonilla was acting within the scope of his employment with Defendant The City of New York.

16.    At all times relevant herein, Defendant Bonilla was acting under color of state law.

17. Defendant Bonilla is sued in his individual and official capacities.

18. At all times relevant herein, Defendant Police Officer Edwin Jerez ("Jerez") was an officer, employee, and agent of Defendant The City of New York.

19. At all times relevant herein, Defendant Jerez was acting within the scope of his employment with Defendant The City of New York.

20. At all times relevant herein, Defendant Jerez was acting under color of state law.

21. Defendant Jerez is sued in his individual and official capacities.

22. At all times relevant herein, Defendant Detective James Barry ("Barry") was an officer, employee, and agent of Defendant The City of New York.

23. At all times relevant herein, Defendant Barry was acting within the scope of his employment with Defendant The City of New York.

24. At all times relevant herein, Defendant Barry was acting under color of state law.

25. Defendant Barry is sued in his individual and official capacities.

26. At all times relevant herein, Defendant Undercover Police Officer ("UC"), Shield No. 119, was an officer, employee, and agent of Defendant The City of New York.

27. At all times relevant herein, Defendant UC was acting within the scope of his employment with Defendant The City of New York.

28. At all times relevant herein, Defendant UC was acting under color of state law.

29. Defendant UC is sued in his individual and official capacities.

30. The name Undercover Police Officer is fictitious, his/her true name being unknown to Plaintiff at this time.

31.     At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were supervisors, officers, employees, and/or agents of Defendant The City of New York.

32.     At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting within the scope of their employment with Defendant The City of New York.

33.     At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting under color of state law.

34.     Defendants John/Jane Doe # 1 - 10 are sued in their individual and official capacities.

35.     The names John/Jane Doe # 1 - 10 are fictitious, their true names being unknown to Plaintiff at this time.

## STATEMENT OF FACTS

### *August 11, 2010 Incident*

36.     On August 11, 2010, Mr. Harvey was present on West Burnside Avenue between Osborne Place and Hennessy Place, Bronx, New York.

37.     Mr. Harvey was stopped by Defendants Duncan, Bonilla, Jerez, and John/Jane Doe # 1.

38.     Defendants Duncan, Bonilla, Jerez, and John/Jane Doe # 1 placed Mr. Harvey under arrest.

39.     Defendants Duncan, Bonilla, Jerez, and John/Jane Doe # 1, in placing Mr. Harvey in handcuffs, purposefully placed the handcuffs on Mr. Harvey excessively tightly.

40.     Mr. Harvey told Defendants Duncan, Bonilla, Jerez, and John/Jane Doe # 1 that the handcuffs were causing him pain and pled with them to loosen the handcuffs.

41. Defendants Duncan, Bonilla, Jerez, and John/Jane Doe # 1 ignored Mr. Harvey's pleas.

42. Defendants Duncan, Bonilla, Jerez, and John/Jane Doe # 1 placed Mr. Harvey in a police van.

43. As Defendants Duncan, Bonilla, Jerez, and John/Jane Doe # 1 placed Mr. Harvey into the police van, they slammed the van door onto Mr. Harvey back, injuring his back and causing him extreme pain.

44. Mr. Harvey suffered damage as a result of Defendants' actions. Mr. Harvey suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

### January 23, 2011 Incident

45. On January 23, 2011, Mr. Harvey was lawfully present near the vicinity of East Tremont Avenue and its intersection with Bronx Park Avenue.

46. Mr. Harvey was walking with his nephew with no criminality afoot when he was approached by Defendants Barry, UC, and John/Jane Doe # 2 – 10.

47. Defendants Barry, UC, and John/Jane Doe # 2 – 10 stopped Mr. Harvey and his nephew.

48. Defendants Barry, UC, and John/Jane Doe # 2 – 10 placed Mr. Harvey under arrest.

49. Defendants Barry, UC, and John/Jane Doe # 2 – 10 placed Mr. Harvey in handcuffs.

50. In placing Mr. Harvey in handcuffs, Defendants Barry, UC, and John/Jane Doe # 2 – 10 purposefully placed the handcuffs on him excessively tight.

51. Mr. Harvey told Defendants Barry, UC, and John/Jane Doe # 2 – 10 that the handcuffs were causing him pain and that his wrists had been previously injured.

52. Mr. Harvey pled with Defendants Barry, UC, and John/Jane Doe # 2 – 10 to loosen his handcuffs.

53. Defendants Barry, UC, and John/Jane Doe # 2 – 10 ignored Mr. Harvey's pleas.

54. Mr. Harvey's arrest was without probable cause.

55. Mr. Harvey's arrest was approved at the Subject Location by Defendant John/Jane Doe # 10.

56. Mr. Harvey was transported to a police precinct.

57. The individual defendants spoke with the Bronx County District Attorneys' Office, individually and collectively lying to the Bronx County District Attorney's Office that Mr. Harvey had violated New York Penal Law §§ 221.40, 221.10(1), and 221.05.

58. Based on these fabricated allegations, the Bronx County District Attorney's Office forwarded to Defendant Barry a Criminal Court Complaint.

59. The Criminal Court Complaint was reviewed and then signed by Defendant Barry.

60. When reviewing and signing the Criminal Court Complaint, Defendant Barry knew the allegations contained therein to be false.

61. The executed Criminal Court Complaint was then forwarded by Defendant Barry to the Bronx County District Attorney's Office.

62.    Legal process was issued against Mr. Harvey, and Mr. Harvey was subsequently arraigned.

63.    During the pendency of the criminal proceeding, Defendants Barry, UC, and John/Jane Doe # 2 - 10 forwarded false evidence to the Bronx County District Attorney's Office, *inter alia*, arrest reports, complaint reports, and property vouchers.

64.    On March 6, 2012, the charges against Mr. Harvey were dismissed in his favor.

65.    Mr. Harvey suffered damage as a result of Defendants' actions. Mr. Harvey was deprived of liberty, suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
### *42 U.S.C. § 1983*

66.    Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

67.    Defendants, by their conduct toward Mr. Harvey as alleged herein, violated Mr. Harvey's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

68.    As a direct and proximate result of this unlawful conduct, Mr. Harvey sustained the damages herein alleged.

## SECOND CAUSE OF ACTION
### *Unlawful Stop and Search*

69.    Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

70.    Defendants Barry, UC, and John/Jane Doe # 2 – 10 violated the Fourth and Fourteenth Amendments because they stopped and searched Mr. Harvey without reasonable suspicion.

71.    As a direct and proximate result of this unlawful conduct, Mr. Harvey sustained the damages herein alleged.

## THIRD CAUSE OF ACTION
### *False Arrest*

72.    Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

73.    Defendants Barry, UC, and John/Jane Doe # 2 – 10 violated the Fourth and Fourteenth Amendments because they arrested Mr. Harvey without probable cause.

74.    As a direct and proximate result of this unlawful conduct, Mr. Harvey sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
### *Excessive Force*

75.    Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

76.    Defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on Mr. Harvey.

77.    As a direct and proximate result of this unlawful conduct, Mr. Harvey sustained the damages herein alleged.

## FIFTH CAUSE OF ACTION
### *Denial of Substantive Due Process*

78.     Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

79.     Defendants Barry, UC, and John/Jane Doe # 2 – 10 created false evidence against Mr. Harvey.

80.     Defendants Barry, UC, and John/Jane Doe # 2 – 10 forwarded false evidence to prosecutors in the Bronx County District Attorney's Office.

81.     In creating false evidence against Mr. Harvey, and in forwarding false evidence to prosecutors, Defendants Barry, UC, and John/Jane Doe # 2 – 10 violated Mr. Harvey's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

82.     As a direct and proximate result of this unlawful conduct, Mr. Harvey sustained the damages herein alleged.

## SIXTH CAUSE OF ACTION
### *Malicious Abuse of Process*

83.     Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

84.     Defendants Barry, UC, and John/Jane Doe # 2 – 10 issued and/or caused to be issued legal process to place Mr. Harvey under arrest.

85.     Defendants Barry, UC, and John/Jane Doe # 2 – 10 arrested Mr. Harvey in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop and search of him/her.

86.    Defendants Barry, UC, and John/Jane Doe # 2 – 10 pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the Bronx and continuing to participate in the prosecution of Mr. Harvey.

87.    Defendants Barry, UC, and John/Jane Doe # 2 – 10 acted with intent to do harm to Mr. Harvey without excuse or justification.

88.    As a direct and proximate result of this unlawful conduct, Mr. Harvey sustained the damages herein alleged.

## SEVENTH CAUSE OF ACTION
### *Malicious Prosecution*

89.    Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

90.    Defendants Barry, UC, and John/Jane Doe # 2 – 10 initiated the criminal proceedings against Mr. Harvey by issuing and/or causing to be issued legal process against Mr. Harvey.

91.    Defendants Barry, UC, and John/Jane Doe # 2 – 10 lacked probable cause to commence the criminal proceedings against Mr. Harvey.

92.    Defendants Barry, UC, and John/Jane Doe # 2 – 10's actions were motivated by actual malice.

93.    The criminal proceeding was terminated in Mr. Harvey's favor.

94.    As a direct and proximate result of this unlawful conduct, Mr. Harvey sustained the damages herein alleged.

## EIGHTH CAUSE OF ACTION
### *Failure to Intervene*

95.     Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

96.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

97.     Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

98.     As a direct and proximate result of this unlawful conduct, Mr. Harvey sustained the damages herein alleged.

## NINTH CAUSE OF ACTION
### *Section 12132 of the Americans with Disabilities Act of 1990, As Amended ("ADA")*

99.     Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

100.    Mr. Harvey suffers from, *inter alia*, pain and limited mobility in his wrists. It is a condition that severely limits the use of his hands and wrists. Accordingly, Mr. Harvey qualifies as a person with an impairment that substantially limits one or more of major life activities. Mr. Harvey's condition therefore constitutes a protected disability under the ADA.

101.    The above-described conduct amounts to discrimination against Mr. Harvey as it violates Section 12132, which states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

102.    Pursuant to Section 12121, Defendant The City of New York is a "public entity" subject to the provisions of the ADA.

103.    Defendant The City of New York's, through its employees and agents, intentional or otherwise deliberate refusal to accommodate Mr. Harvey's needs, in light of their knowledge of Mr. Harvey's physical conditions, violated the ADA.

104.    Instead of accommodating Mr. Harvey's needs, Defendant The City of New York, through its employees and agents, denied Mr. Harvey services and programs available to others that could have prevented this miscarriage of justice, as well as Mr. Harvey's pain and suffering.

105.    The failure to accommodate Mr. Harvey's disabilities was intentional and/or deliberately indifferent to Mr. Harvey's rights under Chapter 126 of the ADA and was the proximate cause of their injuries.

106.    As a consequence of Defendant The City of New York's discriminatory treatment and lack of accommodation, Mr. Harvey suffered serious injuries. Mr. Harvey is, thus, entitled to damages.

## TENTH CAUSE OF ACTION
### *§ 504 of the Rehabilitation Act*

107.    Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

108.    Mr. Harvey qualifies as a person with an impairment that substantially limits one

or more major life activities. Mr. Harvey's disability, therefore, constitutes a protected disability

under the Rehabilitation Act.

109.    Defendant The City of New York's intentional refusal to accommodate Mr.

Harvey's physical condition was tantamount to a denial of services and programs available to

others that could have prevented this miscarriage of justice, as well as Mr. Harvey's pain and

suffering.    The failure to accommodate the foregoing disabilities was intentional and/or

deliberately indifferent to Mr. Harvey's rights under § 504 of the Rehabilitation Act, and bore a

causal link to Mr. Harvey's subsequent injuries.

110.    As a consequence of Defendant The City of New York's discriminatory treatment

and lack of accommodation, Mr. Harvey suffered serious injuries and is entitled to damages.

## ELEVENTH CAUSE OF ACTION
### *Equal Protection Clause under 42 U.S.C. § 1983*

111.    Mr. Harvey repeats and realleges each and every allegation as if fully set forth

herein.

112.    The Defendants' conduct was tantamount to discrimination against Mr. Harvey

based on his ethnicity. Other individuals who are not a racial minority are not, *inter alia*,

stopped, searched, assaulted, battered, and arrested. This disparate treatment caused Mr. Harvey

to suffer serious injuries.

113.    In fact, the NYPD has maintained illegal stop and question practices, as part of a

systematic discriminatory program aimed towards minorities. The searches occur nearly every

day without the requisite level of suspicion, and are so customary as to constitute official municipal policy.

114. One such program is the Clean Halls Buildings program, which initially created to combat illegal activity in apartment buildings. Many buildings are enrolled and remain in the program without regard to whether there is sustained or substantial crime. Thus, residents and their unsuspecting guests are left subject to the unscrupulous stop, question, search, citation, and arrest practices of local NYPD officers.

115. The impact on Blacks and Latinos as compared to Whites is disparaging and significant. From 2006 to 2010, approximately 94.4% of those stopped and questioned for trespassing were Black and Latino, although they only accounted for 52% of the New York City population. Blacks and Latinos were 6 times more likely to be stopped by police than Whites, Asians, and Native Americans combined.

116. The NYPD has also maintained illegal stop and frisk policies, as part of a systematic discriminatory program aimed towards minorities.

117. The New York State Attorney General's 1999 inquiry into the NYPD's stop and frisk program found that between the 175,000 "UF-250" stop and frisk forms filed by officers indicated consistent and significant racial skewing.

118. According to the report, Blacks comprised 25.6% of the City's population, yet 50.6% of all persons stopped were Black. Hispanics comprised 23.7% of the City's population yet, 33.0% of all stops were of Hispanics. By contrast, Whites made up 43.4% of the City's population, but accounted for only 12.9% of all stops. The disparities were further pronounced in precincts where the majority of the population was White. Where Blacks and Hispanics each

represent less than 10% of the population, Blacks and Hispanics accounted for more than 50% of stops during any given period. The New York State Attorney General's finding was that 8 out of 9 searches did not uncover contraband.

119.    Under the NYPD's policy, if a person is stopped and questioned without official use of force (or with consent) and gives his or her name, documentation is not required. Consequently, NYPD officers frequently do not to file the proper UF-250 form to record stop and frisk searches.

120.    Many experts believe the numbers available from NYPD offices do not accurately reflect the discrimination of the NYPD's stop and frisk program. In one independent street interview conducted with 100 Black and Hispanic males between the ages of 14 and 35, 81 participants reported having been stopped, patted down and questioned, without being arrested.

121.    The NYPD arrests more Blacks, Hispanics, and other minorities as compared to Whites in furtherance of its systematic discriminatory program.

122.    The NYPD frequently uses marijuana arrest cases to bolster both its productivity and arrest reports. Marijuana possession is an infraction payable by fine in New York City, yet from 1997 to 2006, 52% Blacks, 31% Hispanics were arrested for possession of marijuana, as compared to 15% of Whites.

123.    Despite the overwhelming evidence from U.S. government surveys that have consistently shown young Whites between the ages of 18 and 25 using marijuana at higher rates than either young Hispanics and Blacks, in 2006, the marijuana arrest rate of Blacks was five times that of Whites. The arrest rate of Hispanics in 2006 was nearly three times that of Whites.

124.    Arrest records consistently show that where minorities represent a small portion

of the population, they also represent the majority of arrestees (with the exception of Staten Island). In Staten Island, Blacks were about 10% of the population, but were 37% of marijuana arrestees. In Manhattan, Blacks were about 17% of the population, but accounted for 43% of marijuana arrestees. In Queens, Blacks were about 20% of the population, but accounted for 57% of marijuana arrestees. In Brooklyn, Blacks were about 36% of the population, but were an overwhelming 65% of marijuana arrestees. Finally, in the Bronx, Blacks were 36% of the population, but accounted for 48% of marijuana arrestees. The White population and the White percentage of marijuana arrestees in each borough were equally skewed, but in the opposite direction.

125. Trespassing and marijuana arrests are the most effective means available for obtaining fingerprints, photographs, and DNA samples (since 2006) from people never before entered in the criminal justice databases. Where those trespassing and marijuana stops result in the issuance of a fine rather than arrest, the outcome is often still detrimental. Often times, young persons in the housing projects (such as those enrolled in the Clean Halls Buildings program) or other poor neighborhoods do not have the means to pay the fines, and a criminal courts will issue a warrant for their arrest. Many times, the subsequent occasion on which that person is stopped, questioned, frisked, or searched by the NYPD, the outstanding warrant will ultimately serve as a basis for arrest.

126. As a result of the foregoing, Mr. Harvey was deprived of rights under the Equal Protection Clause of the Constitution of the United States, and are thereby entitled to damages.

## TWELFTH CAUSE OF ACTION
### *Monell*

127.    Mr. Harvey repeats and realleges each and every allegation as if fully set forth herein.

128.    This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Harvey.

129.    Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

130.    Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

131.    This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

132.    Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

133.    Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

134. Active officers are given promotion opportunities that are not afforded to inactive officers.

135. Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

136. The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

137. Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

138. Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

139. The failure of Defendant The City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

140. Defendant The City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

141.    Defendant The City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

142.    Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

143.    These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

144.    Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

145.    As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

146.    Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

147.    Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

148.    These policies, practices, and customs were the moving force behind Mr. Harvey's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Harvey respectfully requests judgment against Defendants as

follows:

      (a)     Compensatory damages against all defendants, jointly and severally;

      (b)     Punitive damages against the individual defendants, jointly and severally;

      (c)     Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

      (d)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
      May 17, 2013

Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
Attorney for Plaintiff
244 5th Avenue, Suite G247
New York, NY
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com